******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILLIE A. SAUNDERS *v.* COMMISSIONER OF CORRECTION
## (AC 41186)

Alvord, Prescott and Moll, Js.

*Syllabus*

The petitioner, who had been convicted of sexual assault in the first degree and risk of injury to a child, filed a second petition for a writ of habeas corpus, claiming that his rights to due process were violated because he was tried while he was incompetent and a competency examination had not been requested for him during the criminal proceedings by the trial court or by the state, in violation of statute (§ 54-56d). In his first habeas petition, the petitioner alleged that his trial counsel had rendered ineffective assistance. The habeas court denied that petition, and this court dismissed the petitioner's appeal from that denial. In his two count second habeas petition, the petitioner alleged in the first count that he suffered from severe intellectual disabilities that included an inability to read and write, and that he had been diagnosed at a young age as suffering from mental retardation with brain functioning equivalent to that of a ten year old. He alleged that as a result of those purported deficiencies, he could not comprehend the nature of the criminal proceedings against him, other than the general nature of the charges and that he faced incarceration if he were convicted. In the second count, the petitioner alleged that he had significant physiological and mental health afflictions that rendered him incompetent to be prosecuted and to stand trial. The respondent Commissioner of Correction filed a return, pursuant to the applicable rule of practice (§ 23-30), asserting that the petitioner had procedurally defaulted as to both counts of his petition because his due process claims were not raised during his criminal trial or on direct appeal. The respondent further alleged that the petitioner could not establish sufficient cause and prejudice to excuse the procedural defaults. The petitioner thereafter filed a reply to the respondent's return, pursuant to the applicable rule of practice (§ 23-31 [c]), in which he asserted, inter alia, that he could demonstrate cause to excuse the procedural defaults on the basis of the allegations in his habeas petition. The habeas court granted the respondent's motion to dismiss the second habeas petition, concluding that the petitioner's due process claims were procedurally defaulted and that he had failed to allege legally cognizable cause and prejudice to overcome the procedural defaults. The court thereafter granted the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The petitioner's claim that the procedural default rule did not apply to his due process claims, raised for the first time by way of a petition for a writ of habeas corpus, that he was incompetent to stand trial and that the state and the trial court failed to comply with § 54-56d was unavailing:

   a. The petitioner's due process claims, although not distinctly raised before or adjudicated by the habeas court, were reviewable, as the petitioner's reply to the respondent's return contested the assertion of procedural default, and whether the procedural default rule was applicable to the petitioner's claims was a question of law that required no factual findings by the habeas court.

   b. The petitioner's procedural and substantive competency claims were subject to procedural default: although principles of federalism and comity do not apply in state habeas proceedings, federal and state habeas proceedings share a principal prudential interest in the application of the procedural default rule, which is vindicating the finality of judgments, and applying the procedural default rule to a procedural and substantive competency claim accords weight to the finality of judgments by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the court is focused on his case, and the rule promotes the systemic interests of conservation of judicial resources and the accuracy and efficiency of judicial decisions; moreover, the risk of an incompetent person being convicted and sentenced without any requested examination of, or other challenge to,

his or her competency during the criminal trial proceedings or on direct appeal is so minimal that the systemic interests of finality, accuracy of judicial decisions and conservation of judicial resources vastly outweighed such risk, which is not enhanced by requiring a habeas petitioner to allege legally cognizable cause to overcome the procedural default, and that conclusion struck the right balance in according appropriate weight to those systemic interests; furthermore, this court declined to treat the petitioner's claims of incompetence to stand trial in the same manner as substantial claims of actual innocence, which are not subject to procedural default, as state habeas review jurisprudence has developed in tandem with federal habeas review jurisprudence, which limits the fundamental miscarriage of justice exception to actual innocence claims, and our appellate courts have consistently and broadly applied the cause and prejudice standard to all trial level and appellate level procedural defaults, with certain limited exceptions.

2. The habeas court properly determined that the petitioner's claims were procedurally defaulted because his reply was deficient and he failed to demonstrate cause to excuse his procedural defaults; the petitioner's reply did not satisfy the requirements of Practice Book § 23-31 (c), as the petitioner did not articulate with specificity any facts that demonstrated cause to overcome his procedural defaults but, rather, baldly alleged that he could demonstrate cause to excuse the procedural defaults solely on the basis of the allegations in his habeas petition, and even if the petitioner were permitted to rely on the allegations in his habeas petition to demonstrate cause and prejudice to excuse his procedural defaults, the allegations that he was incompetent to stand trial were not sufficient to overcome the procedural defaults, as his alleged incompetence was an internal, rather than an external, impediment to his defense and, thus, could not serve as cause to overcome a procedural default.

Argued May 23—officially released November 26, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Kwak, J.*, granted the respondent's motion to dismiss and rendered judgment thereon, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, assigned counsel, with whom, on the brief, was *Desmond M. Ryan*, for the appellant (petitioner).

*Bruce R. Lockwood*, supervisory assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

MOLL, J. The petitioner, Willie A. Saunders, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus on the ground that his due process claims, predicated on allegations that he was incompetent to stand trial and that the state and the trial court failed to comply with General Statutes § 54-56d,[1] were procedurally defaulted. On appeal, the petitioner claims that the court improperly dismissed the petition because (1) his due process claims were not subject to the procedural default rule, or (2) alternatively, he sufficiently pleaded cause and prejudice to overcome the procedural defaults and allow judicial review of his claims. We disagree and, accordingly, affirm the judgment of the habeas court.

The following recitation was set forth by this court in the petitioner's direct appeal from his conviction. "The jury reasonably could have found the following facts. On April 20, 2003, Easter Sunday, the victim,[2] who was ten years old at the time, and several members of her family . . . were staying with the [petitioner's] sister . . . in her apartment. . . . The sleeping arrangements were such that the victim shared a room with her five year old brother, C . . . . On that night, the victim shared a twin bed with [C] . . . . The victim slept on her stomach, still dressed in her Easter dress with her undergarments and shoes on. At some point, the [petitioner] entered the room and shook the victim's arm, telling her that her mother wanted her. The victim feigned sleep and ignored the [petitioner], who then went into the hall outside the room. . . . The [petitioner] reentered the room and approached the victim, who was still feigning sleep, face down on the bed. He pulled down her undergarments and left the room again. He soon returned and removed C from the twin bed he was sharing with the victim and placed him on the floor. C did not awaken. The [petitioner] then inserted his penis into the victim's vagina. The [petitioner] had lubricated his penis with shampoo that burned the victim's vagina. The [petitioner] then tried to insert his penis fully into the victim's vagina for five minutes to no avail. During the assault, the victim continued to feign sleep in fear that had she not, the [petitioner] would have physically assaulted her. After ending his efforts, the [petitioner] pulled the victim's undergarments back up, placed C back on the bed and left the room. . . . The victim did not immediately report the assault.

"On October 29, 2003, the victim was at home with C and her older brother, D, while their mother was at work. She and D were watching the movie 'The Color Purple' on television. In the movie, there is a scene in which a character is raped by her father and becomes pregnant. After viewing the movie, the victim had a violent outburst in which she destroyed several glass figurines and other items she kept in her bedroom. D

intervened, asking the victim what was wrong with her. The victim told D that the [petitioner] had raped her. D then called their mother and reported to her what the victim had told him. The victim's mother came home and called the police. . . . Subsequently, the victim picked the [petitioner's] photograph out of a photographic array at the police department." (Footnote in original; footnotes omitted.) *State* v. *Saunders*, 114 Conn. App. 493, 495–96, 969 A.2d 868, cert. denied, 292 Conn. 917, 973 A.2d 1277 (2009).

By way of a substitute long form information, the petitioner was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). In June, 2006, following a jury trial, the petitioner was found guilty of both crimes. The trial court imposed a total effective sentence of ten years of imprisonment followed by fifteen years of special parole. This court affirmed the judgment of conviction.[3] See *State* v. *Saunders*, supra, 114 Conn. App. 509.

In October, 2009, the petitioner filed a petition for a writ of habeas corpus alleging that his trial counsel had rendered ineffective assistance by failing to call additional alibi witnesses at trial (first petition). The habeas court denied the first petition. Following the denial of the petitioner's petition for certification to appeal, the petitioner filed an appeal, which this court dismissed. *Saunders* v. *Commissioner of Correction*, 143 Conn. App. 902, 67 A.3d 316, cert. denied, 310 Conn. 917, 76 A.3d 632 (2013).

On September 28, 2015, more than nine years following the judgment of conviction, the petitioner filed a second petition for a writ of habeas corpus—the petition at issue in this appeal (second petition). The second petition consisted of two counts asserting due process violations under the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution on the grounds that the petitioner was incompetent to be prosecuted and to stand trial and that, in violation of § 54-56d, no competency examination had been requested by his trial counsel, the state, or the trial court during the criminal proceedings. In count one, the petitioner alleged that he suffers from severe intellectual disabilities, including, inter alia, an inability to read or write, a diagnosis of "mental retardation" at a young age, and brain functioning equivalent to that of a ten year old child. The petitioner alleged that, as a result of these purported deficiencies, he could not comprehend the nature of the criminal proceedings against him, other than the general nature of the charges and the fact that he was facing incarceration if convicted. He further alleged that his trial counsel, the state, and the court did not request that he undergo a competency examination

during the course of the criminal proceedings.

In count two of the second petition, the petitioner alleged that he had significant physiological and mental health afflictions that rendered him incompetent to be prosecuted and to stand trial. The petitioner alleged, inter alia, that he had a long history of epileptic seizures, a visibly misshapen head, paranoia, schizophrenia, and depression, and that he had been hospitalized on numerous occasions in North Carolina prior to his arrest for the crimes at issue. The petitioner further alleged that these conditions continued to plague him throughout his period of incarceration. He also alleged, as he had in the first count, that his trial counsel, the state, and the trial court had not requested a competency examination during the course of the criminal proceedings.

On March 31, 2016, pursuant to Practice Book § 23-30,[4] the respondent, the Commissioner of Correction, filed a return denying the material allegations in the second petition and asserting several affirmative defenses, including procedural default as to both counts of the second petition.[5] According to the respondent, the petitioner's due process claims regarding his alleged incompetency were not raised during the petitioner's criminal trial or pursued on direct appeal from the judgment of conviction and, thus, the claims were barred by the procedural default rule. Furthermore, the respondent alleged that the petitioner could not establish sufficient cause and prejudice to excuse the procedural defaults.

On July 20, 2016, pursuant to Practice Book § 23-31,[6] the petitioner filed a reply. Therein, in response to the respondent's affirmative defenses sounding in procedural default, the petitioner alleged that because his due process rights were violated by virtue of his standing trial while he was incompetent, it would be "circular" and "illogical" to subject his due process claims to a procedural default analysis. The petitioner also alleged that he could not have raised his due process claims at any earlier juncture because he is "significantly developmentally disabled because of his significantly low IQ [intelligence quotient] of 50" and none of his previous attorneys had his IQ tested and/or his competency evaluated. Finally, in the alternative, he alleged that he could establish both cause and prejudice to overcome the procedural defaults.[7]

On October 25, 2017, pursuant to Practice Book § 23-29, the respondent filed a motion to dismiss the second petition, inter alia, on the ground that the petitioner's due process claims raised therein were procedurally defaulted.[8] Following a hearing held on the same day,[9] the habeas court issued a memorandum of decision granting the motion to dismiss.[10] The court determined that the petitioner's due process claims[11] were procedurally defaulted and that he had failed to allege legally cognizable cause and prejudice to overcome the proce-

dural defaults. The petitioner then filed a petition for certification to appeal, which the court granted. This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before turning to the petitioner's claims, we begin by setting forth the relevant legal principles and standard of review. "Practice Book § 23-29 (5) permits a habeas court to dismiss a petition for 'any . . . legally sufficient ground' "; *Fuller* v. *Commissioner of Correction*, 75 Conn. App. 814, 818, 817 A.2d 1274, cert. denied, 263 Conn. 926, 823 A.2d 1217 (2003); which may include procedural default. *Brewer* v. *Commissioner of Correction*, 162 Conn. App. 8, 16–19, 130 A.3d 882 (2015). "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous." (Internal quotation marks omitted.) *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 338, 199 A.3d 1127 (2018).

I

We first address the petitioner's assertion that his due process claims raised in the second petition were not subject to the procedural default rule and, thus, the habeas court erred in determining that the claims were procedurally defaulted. As a preliminary matter, the respondent argues that we should not consider this particular assertion because it was neither distinctly raised by the petitioner before the habeas court nor adjudicated by that court. We conclude that the petitioner's claim is reviewable but unavailing.

Under our rules of practice, we are not bound to consider a claim unless it was distinctly raised at trial or during subsequent proceedings. See Practice Book § 60-5. "A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. . . . Appellate review of claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) *Giattino* v. *Commissioner of Correction*, 169 Conn. App. 566, 580, 152 A.3d 558 (2016); see also *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 198, 19 A.3d 705 (declining to review petitioner's claim on appeal where record revealed that claim not raised during habeas proceedings and habeas court did not rule on claim), cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011).

We conclude that the petitioner's contention that his due process claims were not subject to the procedural

default rule is properly preserved for our review. In his reply to the respondent's return, the petitioner explicitly contested whether his due process claims could be procedurally defaulted, contending that conducting a procedural default analysis with respect to his claims would be "circular" and "illogical." In its memorandum of decision, the habeas court concluded that the petitioner's claims were procedurally defaulted. Furthermore, whether the procedural default rule is applicable to the petitioner's claims is a question of law requiring no factual findings by the habeas court. Therefore, the petitioner's assertion that his claims are not subject to the procedural default rule is properly before us for review.

We now turn to the merits of the petitioner's claim. The petitioner, relying primarily on the decision of the United States Court of Appeals for the Second Circuit in *Silverstein* v. *Henderson*, 706 F.2d 361 (2d Cir.), cert. denied, 464 U.S. 864, 104 S. Ct. 195, 78 L. Ed. 2d 171 (1983), contends that his due process claims, predicated on his alleged incompetence to stand trial and the alleged failures of the state and the trial court to request that he undergo a competency examination under § 54-56d,[12] are not subject to the procedural default rule. The respondent argues that the petitioner's due process claims are not immune to procedural default. We agree with the respondent.

In order to resolve the petitioner's claim on appeal, we begin with a review of the procedural default rule and its development. "Under the procedural default doctrine, a claimant may not raise, in a collateral proceeding, claims that he could have made at trial or on direct appeal in the original proceeding, unless he can prove that his default by failure to do so should be excused." (Internal quotation marks omitted.) *Cator* v. *Commissioner of Correction*, 181 Conn. App. 167, 199, 185 A.3d 601, cert. denied, 329 Conn. 902, 184 A.3d 1214 (2018).

"Prior to 1991, [our Supreme Court] employed the deliberate bypass rule, as articulated in *Fay* v. *Noia*, [372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963)], in order to determine the reviewability of constitutional claims in habeas corpus proceedings that had not been properly raised at trial or pursued on direct appeal. . . . In *Fay* v. *Noia*, supra, 438–39, the United States Supreme Court held that federal habeas corpus jurisdiction was not affected by the procedural default, specifically a failure to appeal, of a petitioner during state court proceedings resulting in his conviction. The court recognized, however, a limited discretion in the federal habeas judge to deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies. . . . This deliberate bypass standard for waiver required an intentional relinquishment or aban-

donment of a known right or privilege by the petitioner personally and depended on his considered choice. . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief." (Citation omitted; internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 130–31, 629 A.2d 413 (1993).

"After *Fay*, the United States Supreme Court took the view that it had failed to accord adequate weight to comity and finality of the state court judgments and, accordingly, steadily increased the power of federal courts to deny habeas corpus claims based on state procedural defaults by determining that such claims should be reviewed under a more stringent cause and prejudice standard. . . . This change was accomplished by applying the cause and prejudice standard in a series of cases in which procedural defaults arose in a variety of circumstances." (Citations omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 180–81, 982 A.2d 620 (2009).

For example, in 1977, in *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), the United States Supreme Court rejected "the sweeping language of *Fay*"; id., 87; which, "going far beyond the facts of the case"; id., 87–88; "would make federal habeas review generally available to state convicts absent a knowing and deliberate waiver of the federal constitutional contention." Id., 87. Instead, the court applied the rule of *Francis* v. *Henderson*, 425 U.S. 536, 542, 96 S. Ct. 1708, 48 L. Ed. 2d 149 (1976)—which barred federal habeas review absent a showing of "cause" for the failure to raise the claim previously and "prejudice" resulting from the alleged constitutional violation—to a defaulted "objection to the admission of a confession at trial . . . ." *Wainwright* v. *Sykes*, supra, 87. The court left "open for resolution in future decisions the precise definition of the 'cause' and 'prejudice' standard, and note[d] . . . only that it is narrower than the standard set forth in dicta in *Fay* v. *Noia*, [supra, 372 U.S. 391] . . . ." *Wainwright* v. *Sykes*, supra, 87. "Thus was born the *Wainwright* 'cause-and-prejudice' standard for habeas review." *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 413, 589 A.2d 1214 (1991).

As our Supreme Court recognized in *McClain* v. *Manson*, 183 Conn. 418, 439 A.2d 430 (1981), however, because the United States Supreme Court in " '[*Wainwright* v. *Sykes*, supra, 433 U.S. 72] left intact its holding in *Fay* v. *Noia*, [supra, 372 U.S. 391] it remain[ed] undecided which procedural waivers [would] be evaluated under *Fay*'s "deliberate bypass" standard and which under the narrower "cause" and "prejudice" test of *Sykes*.' " *McClain* v. *Manson*, supra, 428–29 n.15, quoting *U.S. ex rel. Carbone* v. *Manson*, 447 F. Supp. 611, 619 (D. Conn. 1978).

In 1991, the United States Supreme Court "unequivocally closed *McClain*'s 'open question' in *Coleman* [v. *Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)]," by expressly rejecting the continued viability of *Fay*'s deliberate bypass standard for federal habeas review. *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 184. That is, "[i]n *Coleman* [v. *Thompson*, supra, 750], the Supreme Court explicitly overruled *Fay*, holding that the cause and prejudice standard applies to '*all cases* in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule . . . .' " (Emphasis in original.) *Crawford* v. *Commissioner of Correction*, supra, 182. "Under this standard, state prisoners who have defaulted federal claims in state court cannot obtain federal habeas corpus review unless they can 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'[13] [*Coleman* v. *Thompson*, supra, 750.] In setting out this standard, the Supreme Court emphasized the importance of the uniform application of procedural default standards, regardless of the specific nature of the procedural default. Id., 750–51 ('[b]y applying the cause and prejudice standard uniformly to all independent and adequate state procedural defaults, we eliminate the irrational distinction between *Fay* and the rule of cases like *Francis* [v. *Henderson*, supra, 425 U.S. 536], *Sykes* . . . and [*Murray* v. *Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)]')." (Footnote added.) *Crawford* v. *Commissioner of Correction*, supra, 182.

"Although [our appellate courts are] not compelled to conform state postconviction procedures to federal procedures . . . our jurisprudence has followed the contours of the Supreme Court's adoption and subsequent rejection of the deliberate bypass standard." (Citation omitted.) Id. Our Supreme Court has followed the federal denunciation of *Fay*'s deliberate bypass standard and held that the cause and prejudice standard in *Wainwright* applies to claims that were not pursued at trial or on direct appeal but were later raised in habeas proceedings. See *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 132, 136 (adopting *Wainwright*'s cause and prejudice standard for habeas review of constitutional claims not pursued on direct appeal); *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 417–19 (adopting *Wainwright*'s cause and prejudice standard for habeas review of constitutional claims not properly preserved at trial). "Since *Jackson*, [our Supreme Court] consistently and broadly has applied the cause and prejudice standard to trial level and appellate level procedural defaults in habeas corpus petitions." *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 186. But see *Hinds* v. *Com-*

*missioner of Correction*, 321 Conn. 56, 61, 136 A.3d 596 (2016) (concluding that "challenges to kidnapping instructions in criminal proceedings rendered final before [*State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008)] are not subject to the procedural default rule"); *Summerville* v. *Warden*, 229 Conn. 397, 422, 641 A.2d 1356 (1994) (holding that substantial claim of actual innocence is not subject to procedural default rule).

The precise issue before us is whether the procedural default rule applies to due process claims, raised for the first time by way of a petition for a writ of habeas corpus, that a petitioner was incompetent to stand trial and/or that the state and the trial court failed to comply with § 54-56d. This issue has not been squarely addressed by this court or by our Supreme Court. Although we are not bound by federal postconviction jurisprudence; *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 70; we continue our discussion by turning to cases from the federal courts and our sister states for guidance. See *State* v. *Favoccia*, 306 Conn. 770, 790–91, 51 A.3d 1002 (2012) ("[i]nasmuch as this is an issue of first impression . . . we turn for guidance to cases from the federal courts and our sister states" [footnote omitted]).

In 1966, the United States Supreme Court observed that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate* v. *Robinson*, 383 U.S. 375, 384, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); see also *Drope* v. *Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) (recognizing, upon granting of certiorari from direct state court criminal appeal, long accepted principle that person who lacks capacity to understand nature and object of proceedings against him, to consult with counsel, and to assist in preparation of defense may not be subjected to trial).

Against the backdrop of the United States Supreme Court's incremental departure from, and eventual rejection of, the deliberate bypass standard, we observe that the better weight of post-*Coleman* federal Circuit Court authority has rejected the expansion of *Pate* and/or *Drope* to preclude the application of the procedural default rule to procedural and substantive competency claims.[14] As we will explain, these courts reason that there is a fundamental distinction between the legal theories of waiver, as applied in *Pate* and *Drope,* and procedural default.

For example, in *Smith* v. *Moore*, 137 F.3d 808, 818 (4th Cir.), cert. denied, 525 U.S. 886, 119 S. Ct. 199, 142 L. Ed. 2d 163 (1998), the petitioner, who claimed in an appeal from the denial of his petition for a writ of habeas corpus that he was incompetent to stand trial, argued that competence to stand trial cannot be waived and, therefore, cannot be procedurally defaulted. The United

States Court of Appeals for the Fourth Circuit disagreed, holding that the petitioner was procedurally barred from raising the claim for the first time on habeas review. Id. The court reasoned: "Neither *Drope* nor *Pate* . . . support[s] [the petitioner's] argument that competence to stand trial may be raised at any time. The rather unremarkable premise behind *Drope* and *Pate* is that an incompetent defendant cannot knowingly or intelligently waive his rights. . . . Unlike waiver, which focuses on whether conduct is voluntary and knowing, the procedural default doctrine focuses on comity, federalism, and judicial economy. . . . Put simply, the rationale of *Drope* and *Pate* [is] inapposite in the context of a procedural default." (Citations omitted.) *Smith* v. *Moore*, supra, 818–19; see also *Burket* v. *Angelone*, 208 F.3d 172, 191–95 (4th Cir.) (concluding that petitioner's procedural and substantive competency claims were procedurally defaulted), cert. denied, 530 U.S. 1283, 120 S. Ct. 2761, 147 L. Ed. 2d 1022 (2000); accord *Gonzales* v. *Davis*, 924 F.3d 236, 242–44 (5th Cir. 2019) (concluding that petitioner's procedural competency claims were procedurally defaulted).

The United States Court of Appeals for the Sixth Circuit agrees. In *Hodges* v. *Colson*, 727 F.3d 517, 539–40 (6th Cir. 2013), cert. denied sub nom. *Hodges* v. *Carpenter*, U.S. , 135 S. Ct. 1545, 191 L. Ed. 2d 642 (2015), the Sixth Circuit considered whether the petitioner's substantive competency claim was subject to procedural default. The court concluded that it was rejecting the petitioner's reliance on decisions from the United States Courts of Appeals for the Tenth and Eleventh Circuits that distinguished between procedural competency claims (which those courts have held are subject to procedural default) and substantive competency claims (which those courts have held are not subject to procedural default). Id., 540 (citing *Battle* v. *United States*, 419 F.3d 1292, 1298 [11th Cir. 2005], cert. denied, 549 U.S. 1343, 127 S. Ct. 2030, 167 L. Ed. 2d 772 [2007]; *Walker* v. *Gibson*, 228 F.3d 1217, 1229 [10th Cir. 2000], cert. denied, 533 U.S. 933, 121 S. Ct. 2560, 150 L. Ed. 2d 725 [2001]; *Adams* v. *Wainwright*, 764 F.2d 1356, 1359 [11th Cir. 1985], cert. denied, 474 U.S. 1073, 106 S. Ct. 834, 88 L. Ed. 2d 805 [1986]). The Sixth Circuit explained: "[N]either the Supreme Court nor this court has adopted such a rule, and we decline to do so here. As the [United States Court of Appeals for the] Ninth Circuit noted in *LaFlamme* v. *Hubbard*, [Docket No. 97-6973, 2000 WL 757525, *2 (9th Cir. March 16, 2000) (decision without published opinion, 225 F.3d 663 ([9th Cir. 2000])], those courts that have held that substantive competency claims cannot be procedurally defaulted appear to have conflated the distinct concepts of waiver and procedural default. Although it is true that substantive competency claims cannot be waived, *Pate* v. *Robinson*, [supra, 383 U.S. 384] ('it is contradictory to argue that a defendant may be incompetent, and yet know-

ingly or intelligently "waive" his right to have the court determine his capacity to stand trial'), they can be procedurally defaulted. We agree with the Ninth Circuit that, 'unlike waiver, the procedural default rule does not rely on the petitioner's voluntary abandonment of a known right but only on the fact that the claim was rejected by the state court on independent and adequate state grounds.' [*LaFlamme* v. *Hubbard*, supra, 2000 WL 757525, *2] . . . . We hereby hold that substantive competency claims are subject to the same rules of procedural default as all other claims that may be presented on habeas."[15] *Hodges* v. *Colson*, supra, 540.

In *Martinez-Villareal* v. *Lewis*, 80 F.3d 1301, 1307 (9th Cir.), cert. denied sub nom. *Martinez-Villareal* v. *Stewart*, 519 U.S. 1030, 117 S. Ct. 588, 136 L. Ed. 2d 517 (1996), the Ninth Circuit similarly held that a petitioner's substantive competency claim could be procedurally defaulted, rejecting an expansive application of *Pate* and distinguishing between the defenses of waiver and procedural default. The court explained: "The waiver standard does not apply when the [s]tate urges procedural default as a defense to a state prisoner's claims. In [*Wainwright* v. *Sykes*, supra, 433 U.S. 73], the [United States Supreme] Court specifically rejected the waiver-based 'deliberate by-pass' standard of [*Fay*], as applied to claims of procedural default. In *Coleman*, the [c]ourt made it clear that the cause and prejudice standard applies to all 'independent and adequate state procedural defaults.' . . . The analytical basis of a defense of waiver differs markedly from that of a defense of procedural default. A claim has been 'waived' if it was not raised and if the standard of 'voluntary relinquishment or abandonment of a known right,' articulated in *Fay*, is met. In contrast, a finding of procedural default requires only that the claim was rejected by the state court on independent and adequate state procedural grounds." (Citation omitted.) *Martinez-Villareal* v. *Lewis*, supra, 1307. The court concluded that, because claims relating to the petitioner's alleged incompetence to stand trial were not raised until his third habeas petition, "the district court erred in holding that the claim was not procedurally defaulted." Id.

We also note that several decisions from our sister states also support the conclusion that competency claims are subject to procedural default. See, e.g., *Perkins* v. *Hall*, 288 Ga. 810, 822, 708 S.E.2d 335 (2011) ("substantive claims of incompetence to stand trial will continue to be subject to procedural default"); *State* v. *Watkins*, 284 Neb. 742, 749–50, 825 N.W.2d 403 (2012) (applying procedural default rule to substantive competency claim).

Persuaded to follow, for purposes of state habeas review, the better weight of authority discussed previously in this opinion, we hold that a petitioner's procedural and substantive competency claims are subject

to procedural default. Although principles of federalism and comity do not apply in state habeas proceedings, federal and state habeas proceedings share a principal prudential interest in the application of the procedural default rule, namely, vindicating the finality of judgments. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 71–72. In applying the cause and prejudice standard to all procedural defaults, our Supreme Court has consistently affirmed finality as a compelling policy. See, e.g., *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 188 (citing *Johnson* and *Jackson*). Applying the procedural default rule to a procedural or substantive competency claim accords adequate weight to the finality of judgments "by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 134. The procedural default rule promotes not only the finality of judgments but also the systemic interests of conservation of judicial resources and "the accuracy and efficiency of judicial decisions," by preserving "the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant's claim and to retry the defendant effectively [as appropriate] if he prevails in his appeal." (Internal quotation marks omitted.) Id. Stated differently, the passage of time creates a sufficiently harmful risk that the accuracy of judicial decisions will be diminished, as memories fade and records are less likely to be available.

Meanwhile, we are persuaded that the risk of a truly incompetent person being convicted and sentenced without any requested examination of, or other challenge to, his or her competency during the criminal trial proceedings or on direct appeal is so minimal that the systemic interests of finality, accuracy of judicial decisions, and conservation of judicial resources vastly outweighed such risk. Moreover, we do not perceive that such risk is enhanced by requiring a habeas petitioner to allege legally cognizable cause to overcome the procedural default.

As our Supreme Court recently has observed, "habeas relief is designed to address situations in which a miscarriage of justice would exist without such relief, and the cause and prejudice standard is not meant to thwart that interest. Rather, the cause and prejudice standard is meant to balance the need for habeas relief with the societal costs of habeas relief." *Newland* v. *Commissioner of Correction*, 331 Conn. 546, 559–60, 206 A.3d 176 (2019). Our conclusion herein, which preserves the availability of habeas review of a due process claim predicated on procedural or substantive competency but requires a petitioner making such a claim to allege legally cognizable cause and prejudice in reply to a procedural default defense; see footnote 17 of this opin-

ion; strikes the right balance in according appropriate weight to the systemic interests discussed previously.

In support of his claim that competency claims are not subject to procedural default, the petitioner largely relies on the Second Circuit's decision in *Silverstein* v. *Henderson*, supra, 706 F.2d 361. By way of background, in *Silverstein*, after his two state court petitions seeking to vacate his conviction had been dismissed, the petitioner filed a petition for a writ of habeas corpus in a federal District Court, asserting, inter alia, that he had been deprived of his right to due process by the state trial court's failure to hold a competency hearing under New York law and its acceptance of his guilty plea while he was incompetent to stand trial. Id., 363–64. The federal District Court dismissed the petition on the ground that the petitioner had neglected to raise the issue on direct appeal. Id., 362, 365. On appeal, the state of New York argued that the petitioner had failed to raise a challenge to his competence on direct appeal in state court and, thus, he could not seek relief in federal court. Id., 366. The Second Circuit rejected that argument. The Second Circuit observed that "[t]he question presented here is whether the waiver rule of [*Wainwright* v. *Sykes*, supra, 433 U.S. 72][16] . . . applies to the right recognized by [*Pate*]." (Footnote added.) Id., 367. The Second Circuit concluded that "*Wainwright*'s waiver rule cannot apply when the basis for attacking the conviction is that the defendant is incompetent to stand trial, and thus incompetent to 'waive' his rights. . . . Thus, when the trial court neglects its duty to conduct a hearing on competence, the defendant's failure to object or to take an appeal on the issue will not bar collateral attack." (Citation omitted.) Id. The Second Circuit stated: "In sum, under *Wainwright*, [the petitioner's] failure to allege on direct appeal that he was incompetent does not bar federal habeas relief." Id., 368.

We decline to follow the Second Circuit's decision in *Silverstein* for two reasons. First, the rationale underpinning the *Silverstein* decision is outdated, and we have significant doubts as to the current viability of the decision. *Silverstein* is a decision issued in 1983, during the pre-*Coleman* period when, because the United States Supreme Court in *Wainwright* "left intact its holding in *Fay* v. *Noia*, [supra, 372 U.S. 391], it remain[ed] undecided which procedural waivers [would] be evaluated under *Fay*'s deliberate bypass standard and which under the narrower cause and prejudice test of *Sykes*." (Internal quotation marks omitted.) *McClain* v. *Manson*, supra, 183 Conn. 428–29 n.15. In reaching its decision in *Silverstein*, the Second Circuit relied on the premise that, under *Pate*, an incompetent petitioner cannot knowingly or intelligently *waive* his or her rights. Like other decisions during that pre-*Coleman* period, *Silverstein* conflates the defenses of waiver and procedural default. Put simply, although competency

claims cannot be waived under *Pate*, they may be procedurally defaulted. See *Hodges* v. *Colson*, supra, 727 F.3d 540. For these reasons, we consider *Silverstein* to be unpersuasive.

Second, although we acknowledge that "it is well settled that decisions of the Second Circuit, while not binding upon this court, nevertheless carry particularly persuasive weight in the resolution of issues of federal law"; (internal quotation marks omitted) *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 210, 177 A.3d 1144 (2018); the present case involves the application of a state procedural default rule raised in the context of the petitioner's federal due process claims concerning his competency and, thus, does not require us to resolve a pure issue of federal law.

The petitioner also thinly asserts that this court should treat claims of incompetence to stand trial in the same manner as substantial claims of actual innocence, which are not subject to procedural default. See *Summerville* v. *Warden*, supra, 229 Conn. 422 (concluding that "[t]he continued imprisonment of one who is actually innocent would constitute a miscarriage of justice" such that, notwithstanding strong interest in finality of judgments, substantial claim of actual innocence cannot be procedurally defaulted). We decline to do so for two reasons. First, mindful that our state habeas review jurisprudence has developed in tandem with federal habeas review jurisprudence, we deem it prudent to follow the United States Supreme Court's limitation of the "fundamental miscarriage of justice" exception to actual innocence claims. See *Schlup* v. *Delo*, 513 U.S. 298, 322, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Second, in light of our appellate courts' consistent and broad application of the cause and prejudice standard to all trial level and appellate level procedural defaults; *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 186; with the exceptions of actual innocence claims and *Salamon* claims, as identified previously in this opinion, we are persuaded that procedural and substantive competency claims are properly subject to the procedural default rule. This is particularly so in light of our Supreme Court's recent decision in *Newland* v. *Commissioner of Correction*, supra, 331 Conn. 548, in which the court applied the cause and prejudice standard to a procedurally defaulted claim of a complete deprivation of counsel during the petitioner's criminal proceedings.

In sum, the petitioner's due process claims grounded in his alleged incompetence to stand trial and the alleged failures by the state and by the trial court to comply with § 54-56d were subject to procedural default. Thus, the petitioner's first claim fails.

II

Having concluded that the habeas court was correct

to apply the cause and prejudice standard of the procedural default rule to the petitioner's due process claims, we next turn to the petitioner's alternative assertion that the court erred in determining that he failed to plead legally cognizable cause and prejudice to overcome the procedural defaults. We conclude that the court properly determined that the petitioner's claims were procedurally defaulted because (1) the petitioner's reply was deficient and (2) the petitioner failed to demonstrate cause to excuse the procedural defaults.[17]

By way of additional procedural background, in his reply to the respondent's return, the petitioner alleged the following with respect to whether he could demonstrate cause and prejudice to overcome the respondent's affirmative defense of procedural default directed to count one of the second petition: "[The] petitioner can establish cause and prejudice to permit review of the claim in count [one]. [The] petitioner relies on facts alleged in [the second petition] to establish cause and prejudice. [The] petitioner is prejudiced because he stands convicted of sexual assault in [the] first degree and is currently serving ten years of special parole."[18] The petitioner set forth identical allegations in reply to the respondent's affirmative defense of procedural default with respect to count two of the second petition.

In its memorandum of decision dismissing the second petition, in considering whether the petitioner's due process claims were procedurally defaulted, the court determined that the petitioner failed to raise his due process claims during the criminal trial proceedings or on direct appeal from the judgment of conviction. Relying on this court's decision in *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 971 A.2d 766, cert. denied, 293 Conn. 915, 979 A.2d 488 (2009), the habeas court concluded that the petitioner's reply "fail[ed] to allege any facts or assert any cause and resulting prejudice to permit review of his claims. In fact, he assert[ed] in the reply that he . . . 'relies on facts alleged in [the second petition] to establish cause and prejudice,' which is not permissible, nor sufficient to overcome the respondent's affirmative defense[s] of procedural default. The court finds, therefore, that the petitioner has failed to allege legally cognizable cause and prejudice to rebut his procedural default[s]."

A

We first address the issue of whether the habeas court correctly ruled that the petitioner's reliance on the allegations contained in the second petition to establish cause and prejudice was impermissible. The petitioner contends that incorporating the allegations in the second petition into his reply in order to demonstrate cause and prejudice was neither impermissible nor inappropriate. We conclude that the court did not err in determining that the petitioner's reply was deficient.

" 'The petition [for a writ of habeas corpus] is in the nature of a pleading, and the return is in the nature of an answer.' . . . '[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the [habeas] court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the [petition] is insufficient to allow recovery.' . . .

" 'When a respondent seeks to raise an affirmative defense of procedural default, the rules of practice require that he or she must file a return to the habeas petition "alleg[ing] any facts in support of any claim of procedural default . . . or any other claim that the petitioner is not entitled to relief." Practice Book § 23-30 (b). "If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply." Practice Book § 23-31 (a). "The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default." [The reply shall not restate the claims of the petition.] Practice Book § 23-31 (c). . . .'

" 'The appropriate standard for reviewability of [a procedurally defaulted claim] . . . is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . .

" 'Once the respondent has raised the defense of procedural default in the return, the burden is on the petitioner to prove cause and prejudice.' " (Citations omitted.) *Anderson* v. *Commissioner of Correction*, supra, 114 Conn. App. 786–87.

In ruling that the petitioner's reply was deficient, the habeas court cited *Anderson* v. *Commissioner of Correction*, supra, 114 Conn. App. 778, which we consider to be instructive. In *Anderson*, after the petitioner had filed his first amended petition for a writ of habeas corpus, the respondent filed a return asserting, inter alia, that some of the petitioner's claims were procedurally defaulted. Id., 782. Subsequently, the petitioner filed his operative thirty-seven count petition for a writ of habeas corpus. Id., 783.

In the operative petition, the petitioner alleged that the claims raised therein "met and overcame both the cause and prejudice standard and the respondent's affirmative defense of procedural default, thereby permitting review of his claims. In short, the petitioner appear[ed] to have claimed that because he stated in his [operative] petition that he should not be procedurally defaulted, that [conclusory] assertion, by itself, was adequate to avoid being procedurally defaulted." Id., 785. The respondent then filed an amended return contending that the petitioner failed to comply with Practice Book § 23-31 (c) because he had not filed a reply setting forth a factual basis to excuse the procedural default. Id. Thereafter, the petitioner filed a reply, inter alia, denying that he had procedurally defaulted on any of his claims and asserting that he was relying on the allegations in his operative petition and his reply to overcome the respondent's affirmative defense of procedural default. Id., 785–86. The habeas court denied the operative petition, concluding in relevant part that twenty-one of the thirty-seven counts were procedurally defaulted because the petitioner's reply to the respondent's amended return did not comply with § 23-31 (c). Id., 783–84, 786.

On appeal to this court, the petitioner claimed that he alleged cause and prejudice in his operative petition to overcome the respondent's affirmative defense of procedural default and that Practice Book § 23-31 (c) prohibited him from repeating those allegations in his reply. Id., 787–88. This court rejected that claim, stating: "The petitioner's claim lacks merit. Practice Book § 23-31 (c) explicitly requires a petitioner to assert facts and any cause and prejudice that would permit review of an issue despite a claim of procedural default. See Practice Book § 23-31 (c). Although that provision states that '[t]he reply shall not restate the claims of the petition,' it does not relieve the petitioner of his obligation with respect to the contents of a reply. . . . The petitioner's reply fails to allege any facts or assert any cause and resulting prejudice to permit review of his claims. He simply relies on the allegations raised in his amended petition, which are equally as vague and fail to articulate with sufficient specificity what the court, the prosecutor or trial counsel did to prevent him from raising those claims at trial or on direct appeal. We conclude, therefore, that the court properly determined that the petitioner failed to comply with Practice Book § 23-31 (c)." (Citations omitted; footnote omitted.) *Anderson* v. *Commissioner of Correction*, supra, 114 Conn. App. 788–89.[19]

Guided by our decision in *Anderson*, we conclude that the court properly determined that the petitioner's reply was deficient. In his reply, the petitioner baldly alleged that he could demonstrate cause to excuse the procedural defaults solely on the basis of the allegations

set forth in the second petition. The petitioner did not articulate with specificity any facts in the reply demonstrating cause to overcome the procedural defaults. Accordingly, the petitioner's reply did not satisfy the requirements of Practice Book § 23-31 (c).

## B

Even if we assume that the petitioner were permitted to rely on the allegations set forth in the second petition to demonstrate cause and prejudice to excuse the procedural defaults, we turn to whether the court correctly determined that the petitioner's allegations were insufficient to demonstrate cause and prejudice. The petitioner submits that his allegations that he was incompetent to stand trial establish cause to overcome the procedural defaults. The respondent argues that the petitioner failed to demonstrate a "factor external to the defense" explaining the procedural defaults and, thus, the petitioner did not establish cause. We agree with the respondent.[20]

In *Murray* v. *Carrier*, supra, 477 U.S. 478, the United States Supreme Court stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner *can show that some objective factor external to the defense* impeded counsel's efforts to comply with the [s]tate's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 488. We previously have applied this standard to analyze procedural default claims. See, e.g., *Gaskin* v. *Commissioner of Correction*, 183 Conn. App. 496, 515, 193 A.3d 625 (2018); *Streater* v. *Commissioner of Correction*, 143 Conn. App. 88, 99–100, 68 A.3d 155, cert. denied, 310 Conn. 903, 75 A.3d 34 (2013).

Whether alleged incompetence constitutes cause to excuse a procedural default has not been addressed by our appellate courts. Thus, we again turn to cases from other jurisdictions for guidance. See *State* v. *Favoccia*, supra, 306 Conn. 790–91.

In *Harris* v. *McAdory*, 334 F.3d 665, 668–69 (7th Cir. 2003), cert. denied, 541 U.S. 992, 124 S. Ct. 2022, 158 L. Ed. 2d 499 (2004), the United States Court of Appeals for the Seventh Circuit concluded that a petitioner's alleged "borderline mental retardation" did not constitute cause excusing the procedural default of his ineffective assistance of counsel claim. The Seventh Circuit observed that the focus of the cause analysis is on the " 'external' nature of the impediment. Something that comes from a source within the petitioner is unlikely

to qualify as an external impediment." Id.; see also *Gonzales* v. *Davis*, supra, 924 F.3d 244 (alleged mental incompetency not external to petitioner and, thus, did not satisfy cause requirement); *Johnson* v. *Wilson*, 187 Fed. Appx. 455, 458 (6th Cir. 2006) (petitioner's borderline mental impairment not "external" to defense and, thus, did not constitute cause), cert. denied, 549 U.S. 1218, 127 S. Ct. 1273, 167 L. Ed. 2d 96 (2007); *Hull* v. *Freeman*, 991 F.2d 86, 91 (3d Cir. 1993) (petitioner's illiteracy and "mental retardation" not " 'external' " to defense and, thus, did not constitute cause).

We agree with the rationale set forth by the Seventh Circuit in *Harris* and the other federal courts that have determined that a petitioner's mental impairment is not an *external* impediment to the petitioner's defense and, thus, cannot serve as cause to overcome a procedural default. Here, the petitioner's alleged incompetency to stand trial is an internal, rather than an external, factor. Accordingly, the petitioner's allegations of incompetency to stand trial were not sufficient to demonstrate cause to excuse the procedural defaults of his due process claims and, thus, the habeas court did not err in ruling that the petitioner's claims were barred under the procedural default rule.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-56d provides in relevant part: "(a) Competency requirement. Definition. A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"(b) Presumption of competency. A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) Request for examination. If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency. . . ."

[2] "In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e." *State* v. *Saunders*, 114 Conn. App. 493, 495 n.3,969 A.2d 868, cert. denied, 292 Conn. 917, 973 A.2d 1277 (2009).

[3] On direct appeal, the petitioner made three claims: "(1) the state adduced insufficient evidence to sustain his conviction, (2) the trial court improperly allowed the state to comment on missing witnesses during final argument and (3) the state engaged in prosecutorial impropriety during final argument and, therefore, deprived him of his due process right to a fair trial." *State* v. *Saunders*, supra, 114 Conn. App. 494–95.

[4] Practice Book § 23-30 provides: "(a) The respondent shall file a return to the petition setting forth the facts claimed to justify the detention and attaching any commitment order upon which custody is based.

"(b) The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

[5] The respondent asserted identical procedural default affirmative defenses with respect to both counts of the second petition. The respondent also asserted that (1) to the extent that the petitioner was raising an ineffec-

tive assistance of counsel claim in both counts of the second petition, those claims had been raised in the first petition and resolved in the prior habeas action, and the petitioner had presented no new facts or evidence unavailable at the time of the first petition, and (2) the first count failed to state a claim upon which relief can be granted. In its memorandum of decision dismissing the second petition, the habeas court did not address those additional affirmative defenses, and neither party has raised any claims as to those affirmative defenses on appeal.

[6] Practice Book § 23-31 provides: "(a) If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply.

"(b) The reply shall admit or deny any allegations that the petitioner is not entitled to relief.

"(c) The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. The reply shall not restate the claims of the petition."

[7] There is no dispute that the petitioner failed to raise the due process claims in the second petition during his criminal trial proceedings or on direct appeal from the judgment of conviction.

[8] On September 20, 2017, the respondent filed a separate motion to dismiss the second petition, which, with permission from the habeas court, subsequently was amended to be captioned as a motion for summary judgment. Therein, the respondent asserted that (1) the due process claims raised in both counts of the second petition were procedurally defaulted, and (2) the due process claim raised in count one of the second petition failed to state a claim upon which relief could be granted. On October 17, 2017, the court denied the motion for summary judgment, concluding that there were genuine issues of material fact in dispute. That decision is not at issue on appeal.

[9] The respondent's motion to dismiss was dated October 20, 2017, but the motion was not filed until October 25, 2017, when it was submitted to the habeas court during the October 25, 2017 hearing. At the October 25, 2017 hearing, the respondent's counsel represented that she had filed the motion to dismiss on an unspecified date and that opposing counsel had received a copy of the motion, but that the filing did not appear on the Judicial Branch website and, apparently, the habeas court had never received the motion. The respondent's counsel then indicated that she had made a copy of the motion to dismiss for the court and requested permission from the court to proceed with argument on the motion, which the court allowed.

[10] The habeas court issued a written memorandum of decision, which it read into the record during the October 25, 2017 hearing.]

[11] In his reply to the respondent's return, the petitioner asserted that he was not raising a claim of ineffective assistance of counsel in the second petition. In its memorandum of decision, the habeas court determined that "[a] fair and liberal reading of the two counts in the [second] petition supports the conclusion that the petitioner is alleging only a due process violation, and that he is not alleging ineffective assistance of counsel . . . ."

[12] In the second petition, the petitioner also alleged that his trial counsel failed to request that he undergo a competency examination. On appeal, however, the petitioner focuses only on the alleged failures of the state and the trial court to request a competency examination.

[13] In *Schlup* v. *Delo*, 513 U.S. 298, 322, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the United States Supreme Court expressly tied the "fundamental miscarriage of justice" exception to actual innocence claims.

[14] "A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." (Internal quotation marks omitted.) *Lay* v. *Royal*, 860 F.3d 1307, 1314 (10th Cir. 2017), cert. denied,      U.S.     , 138 S. Ct. 1553, 200 L. Ed. 2d 752 (2018).

[15] Although we agree with the Tenth and Eleventh Circuits' view that procedural competency claims are subject to procedural default; *Lay* v. *Royal*, supra, 860 F.3d 1314–15; *Battle* v. *United States*, supra, 419 F.3d 1298; we agree with the Sixth and Ninth Circuits' observation that those courts' adoption of a different rule for substantive competency claims is premised on an expansive application of *Pate* and a conflation of the defenses of waiver and procedural default. See *Lay* v. *Royal*, supra, 1318–19 (Briscoe, J., concurring) (suggesting that Tenth Circuit reconsider precedent holding that substantive competency claims cannot be procedurally defaulted, highlighting that other circuit courts of appeal have rejected reading *Pate* expansively in light of distinction between legal theories of waiver and proce-

dural default).

[16] In addition to *Wainwright,* the Second Circuit in *Silverstein* cited its decision in *Forman* v. *Smith,* 633 F.2d 634 (2d Cir. 1980), cert. denied, 450 U.S. 1001, 101 S. Ct. 1710, 68 L. Ed. 2d 204 (1981), in which it concluded, on the basis of its "review of the origins of the cause and prejudice standard and the reasons for its application in [*Wainwright* v.] *Sykes* [supra, 433 U.S. 72] to forfeitures of specific claims at trial," concluded that the cause and prejudice standard "also applies to forfeitures of specific claims on appeal." *Forman* v. *Smith,* supra, 640.

[17] We need not address whether the petitioner demonstrated prejudice because the cause and prejudice standard is conjunctive. See *Bowers* v. *Commissioner of Correction,* 33 Conn. App. 449, 452, 636 A.2d 388, cert. denied, 228 Conn. 929, 640 A.2d 115 (1994). Moreover, we expressly leave open the question of whether prejudice may be presumed, for purposes of procedural default, where a petitioner has established cause for failing to raise a procedural or substantive competency claim either at trial or on direct appeal. See *Newland* v. *Commissioner of Correction,* supra, 331 Conn. 548 (concluding that "for purposes of procedural default, after the petitioner has established good cause for failing to raise his claim that he was completely deprived of his right to counsel [at his criminal trial], prejudice is presumed").

[18] The petitioner also alleged the following in reply to the respondent's contention that he had procedurally defaulted with respect to his due process claim set forth in count one of the second petition: "[The] petitioner could not have raised this claim at an earlier point in any legal proceeding concerning his prosecution and conviction without the assistance and advice of counsel because the petitioner was and is significantly developmentally disabled because of his significantly low IQ of 50." He set forth an identical allegation in reply to the respondent's contention that he had procedurally defaulted with respect to his due process claim set forth in count two. The petitioner did not expressly assert in his reply that the foregoing allegations constituted cause excusing his procedural defaults; rather, he contended that he was relying on the facts alleged in the second petition to demonstrate cause.

[19] In *Anderson,* this court also observed the following: "We note as well that in the [operative] petition, although the petitioner makes the assertion that he is not procedurally defaulted, he fails, completely, to set forth any facts that would warrant a conclusion that he should not be procedurally defaulted. Thus, we do not confront a case in which a pro se litigant has set forth an adequate basis to elude procedural default, albeit in the wrong format." *Anderson* v. *Commissioner of Correction,* supra, 114 Conn. App. 788 n.4. In the present case, the petitioner, who was represented by counsel before the habeas court, did not set forth any specific allegations regarding cause and prejudice in the second petition.

[20] The petitioner also claims that his allegations demonstrated prejudice. We need not reach this claim. See footnote 17 of this opinion.

---